May it please the court, excuse me. My name is Roderick Bond, and here today with me is John Guillen, my co-counsel, and Mr. Dan, chair holder of AI Services. I want to thank you for the opportunity to argue today. Sorry, I'm nervous, I always get nervous when I get before appellate court. No reason to be nervous with us. Stand back and have a family conversation. I'm going to try to leave myself with six minutes for rebuttal, but I guess I'll watch the clock here. First of all, I would like to apologize to the court. We did those recent filings on the cases, and I did have a couple of incorrect case numbers, so I apologize for that. That's fine. We're more interested in the substance than the case numbers. Anyway, moving along. So here, the district court erred and abused its discretion when it denied Donna Taylor's motion to lift the stay and her motion for reconsideration, because none of the abstention factors were present, and we didn't even have a parallel action out of any of the cases pending. So the district court erred in all respects and abused its discretion all the way around. However, even if the elements of abstention were present and it was appropriate to stay the case, the district court still abuses discretion when it refused to bifurcate the claims from the AIA defendants, from the Holly Troxell defendants. Were there any cases in the circuit that have held that a district court erred when it refused to bifurcate? No, I honestly searched to and fro. I could not find anything. I'm just going back to the rule of law to exercise jurisdiction when appropriate, and that's what I was basing that on, the abstention doctrine. What concerned me there is, apart from also the question that Judge Gleeson asked, is whether we would have any jurisdiction over a bifurcation determination, which is different than the Colorado stay order. Well, I think it's still a Colorado stay, but I see your point. However, as a preliminary matter, we don't even need to get to that motion, because we have a complete abuse of discretion as to the refusal to lift the stay. And the threshold requirement is you have to... So would you agree that since the stay was in place and what you're asking for is to lift the stay, that we look at the district court's decision based on abuse of discretion? Because that's our starting point. No, it's a de novo review of the facts. Once the court determines the factors... Well, the reason I'm confused is because you said that it was an abuse of discretion. I apologize. If I misspoke, the standard for both motions, for all of the motions before this court, is the court needs to identify the abstention factors. Once it has identified those factors, then and only then does it reach the district court's discretion whether to apply abstention, and then it can dismiss the case. But you see, one of my concerns about that approach is that first the district court makes an abstention ruling some time ago, and that wasn't appealed. If it's de novo now, it's like you get another free appeal of the first appeal, as opposed to whether changed circumstances suggest it should be lifted now. So there's two separate things, and maybe you can explain to me why, if we look at this de novo, it's not in effect saying that we're reviewing the initial stay order. And I would say, Your Honors, there's a twofold reason there. And that is, number one, we had changed circumstances. We had new cases filed by AI Services, by the AI defendants, to try to squeeze out the minority shareholders and get rid of them for $0.10 a share. That's why this case was on stay. The other issue that we had, and there's other evidence as well, another lawsuit filed by a lender against AI Services. That evidence was all there. But out of that evidence and out of the motion to lift the stay came a new order, and absent from that order are any of the findings that were previously made as far as the judge changed his mind, and now he just said, I'm just staying in this case pending Taylor v. Riley, which was Reed Taylor's malpractice action that had absolutely nothing to do with the claims in the instant case. Maybe we could focus on that then. He did mention that, and we'll leave aside now what allegation the district court had to make findings. But the Taylor v. Riley case was in existence at the time of the original stay, correct? Correct. Okay, and what was the status of Taylor v. Riley at the time of the original stay? That's not in the record, but fortunately you're talking to the guy that's been on most of the cases, so I can tell you. But what had happened was, in 2010... Well, let me just say, I probably wasn't very precise. At the time the judge issued the initial order, he stayed Taylor v. Riley pending the Idaho Supreme Court's Taylor v. AIA, correct? I think it was that he stayed it. He said he stayed it pending the state court actions, but he said, quote, particularly Reed Taylor v. AIA et al. and Donna Taylor v. John Taylor. Did he identify all six cases that were then pending? That's how I read it. Earlier on in the order. Yeah, I believe that he did identify the cases, and there's no question there's a lot of cases. I mean, believe me, I'm probably going to write a book about this someday. That's how bad it is. But Taylor v. Riley was in 2010, or I should say 6-29 of 2011, was stayed because what happened is I defeated their motion for summary judgment. The district court said the opinion letter authors owed a duty of care to Reed Taylor. Then they came back and said, well, we need to stay this case until the Idaho Supreme Court rules in Taylor v. AIA Services. So that case was stayed pending the decision in Taylor v. AIA Services, which was handed down September 7, 2011. That eliminated the stay in the Taylor v. Riley case and, of course, eliminated the judge's concern over the case here. As you know, most of these people have the same sounding names because they are. So I just want to be clear about Taylor v. Riley, which was stayed pending Taylor v. AIA. Both of those were Reed Taylor, was the plaintiff. Both of those, Reed Taylor is the plaintiff. Reed Taylor and Donna Taylor are ex-husband and wife. I understand. They're separated. Yeah, but not. Divorced at this point. So in Taylor v. Riley, the Supreme Court both affirmed and reversed in part on that case. Correct. And that occurred after the district court looked at whether to lift the stay or not. And after it denied reconsideration. So it was after. And then we asked you, of course, for the status of that. Right. So what we're sitting here with is a situation where that was one of the cases mentioned of the six or more, as Judge Gleason says. Judge issues the order. He denies the stay. But now the situation has changed slightly in that case, but that's after the district court's denial and motion for reconsideration and all of that. Correct. So practically speaking, although the case is on reconsideration, so now that there's a settlement as to the other defendants, under Idaho law you can go back up to two weeks before a final judgment is entered and reconsider any prior ruling. So I'm reconsidering a ruling that would basically moot part of the Supreme Court's decision. So that case is still alive. Let me just ask you as a practical matter, however that may come out in the Idaho Supreme Court in your settlement, at a minimum why wouldn't we let the district court determine what effect that had, if anything, on changed circumstances rather than trying to decide on appeal on something that the district court didn't have in front of it to begin with? Well, because the district court had the complaint and that action in front of it. I know, but it had the complaint. There's no similarity to the cases. That goes back to my first question. The district court had the complaint on day one when it decided to issue the Colorado stay order. I don't believe it did, but I'm not sure. I wasn't counsel then. I came on this case after that first court. Well, let's say that Taylor v. Riley was filed in 2009. Correct, October 1st. So that would suggest the complaint was available to the district court. I'm assuming that somebody, but I just don't want to answer a question when I'm not 100% sure. I know it's in the record. The district court had it and made a decision about it back then, and that was not appealed, correct? That was not appealed at that time. Okay. So what is there about the status of Taylor v. Riley as opposed to the underlying claims that changed between the time of the initial order and the time of the denial of the motion to lift? Did anything change? Well, I think what persuaded the judge that that case meant something was Mr. Thompson submitted discovery responses from the Taylor v. Riley case that outlined all these claims of malfeasance. But those claims of malfeasance were part of the case within a case doctrine that I'm sure you're all aware of. Had the redemption of Reed Taylor's Ben Shares been legal, he would have been a secure creditor. Therefore, he could collect on all of his claims, which were tort and contract claims. Did anything change in terms of the shape of the claims between the time of the original order and the request to lift the stay in that case? There was an argument that Reed Taylor had made that he had a direct derivative type claim. That was out of the picture at that point in time. Right. I know. So I guess I'm just, I think, here's the problem is, I think I understand where you're coming from, but to me, the district court could have just said, nothing has changed. And he could have held to his original decision. Counsel could have argued, hey, the court erred by even considering anything. The court shouldn't have done that. You should affirm on alternative grounds. They're not arguing that. All we have is a brand new Colorado River order, and it's based on the stay in one case that was never even, the court didn't even mention in particular previously. And so that implicates a whole new de novo review, a whole new abuse of discretion standard. And so if there's any error there, it's now been invited by them. They haven't even disputed that issue. They come back with this jurisdiction argument in their brief, and that's it. So I'll save my last 2.5 minutes. All right. Thank you. I also just want to say that I think the court appreciates this listing that you provided of the cases because it's very helpful, and there are a lot of cases. And I know you've been living with this a long time. We've been living with it less. So thank you very much. If it pleases the court, I'm Jeff Thompson, and I represent today for oral argument purposes all of the joint appellees, the attorney defendants as well as the corporate and individual defendants. I think going to the judge's question, I think it goes to the heart of the status as we sit here today. First, I'm not certain that a motion to lift a stay is an actual Colorado River order. We couldn't find any case law that would identify it as such. We did find a couple of cases in bankruptcy court that seemed to suggest that it is not. The original stay is a Colorado River doctrine document and order, but not the motion to lift the stay. And as the judge points out, it becomes essentially the motion to lift the stay is really an untimely motion for reconsideration because all of the conditions in the original stay have not been met. There were six cases that were pending at that time, three of which had been resolved in some fashion or another by the time the motion to lift the stay had occurred, but three were still pending, including the infamous Reed-Taylor v. Riley. So that fact that three out of six had been resolved, does that support a finding that there's been a change in circumstance? There has been a change of circumstances, but not a sufficient change of circumstances for the court to reconsider its original stay. Well, maybe there's jurisdiction for the court to take a look at it, so let's just assume there's jurisdiction for talking purposes. So now it's in front of the district court. Three cases have fled the coop. You've got these others, and the argument that's being made is that this Riley case, it doesn't jive with the derivative action case. There's sort of like a 1995 dividing point, and that seems to be a dividing point between the parties. Maybe you could address that issue as to whether the claims are the same, or they overlap, or what's their relationship? They do overlap in several respects. First, there are common parties between the two cases. Second, there are common parties. Okay, let's start with the common parties. Who are the common parties? The one lawyer. Mr. Riley. Is there any other common party? Correct. There are. Okay, who else? The Holly Troxell, Anson Holly firm is also a common party. Did they get in there because of Mr. Riley? They're brought in as being connected, but they're separate parties. Right. Okay, now let's go back to my question. Holly Troxell is in there because Mr. Riley is now on Holly Troxell, right? Correct. Okay. So there are two common parties. They're kind of the same party, more or less. According to Mr. Bond in the Reed-Taylor versus Riley case, they are separate and distinct and have separate and distinct causes of action. Okay. So Riley and Holly Troxell are the only two overlapping parties. That is correct. There are overlapping claims in that, in both cases, there are breach of fiduciary duty causes of action, and there is a fraud cause of action in both cases. Right, but what's the time frame of the breach of fiduciary action claim in the two cases? As I read Ms. Taylor's pleading, she's saying there are distinct time frames that are being alleged in the two cases. Maybe you can explain that from your point of view. I think it's best to explain it that all of the problems that are facing AIA and all of the claims that are being made by Donna Taylor, Reed-Taylor, common or otherwise, basically arise out of an event that occurred in 1995 in terms of AIA defaulting on a note, AIA not having sufficient assets at that time, and AIA not having sufficient assets after that time to pay the various shareholders their dividends and their stock. Now granted, the trigger of that did not, the trigger of paying the shareholders and the common, the shareholders didn't occur until after there was a default on a note sometime later, I believe in 2007, but there's a through line from all of these cases that starts and begins in 1995 with various transactions and goes through today. The substance, as I understand it, of Mr. Taylor's action in Taylor versus Riley, that's the one Judge Boyle was principally concerned with, is that correct? Correct. The substance of that action is that he, Mr. Taylor, was misadvised in entering into a transaction involving the transfer of stock, correct? Correct. And at the time that alleged misadvice occurred, Mr. Riley was with the first firm, right? Emberly Berlin, correct. Okay, all right. Her action that we're here on today is against the new directors who came in after the stock transfer and allegations that they've mishandled the affairs of the corporation, correct? Correct. And a claim against the Hawley Troxell firm for helping carry that out. Correct. So why aren't those two completely separate items? What is it about the processing of Mr. Taylor's action against Riley et al that would have any impact whatsoever on Donna Taylor's action against Hawley Troxell and the follow-on directors? Donna Taylor is the sole owner of the Series A preferred stock. She also claims standing in the derivative action for some common shares. They are seeking in this derivative action to get back assets and put it into AIA so that AIA can pay for these preferred stock and the common shares, the dividends from those. Based on the actions of the subsequent directors, correct? Correct, yes. She makes no allegation against the prior directors of AIA. None that I'm aware of. So everything is post-1995, is that correct, in terms of her allegations? Correct. Is there any allegation in either Mr. Taylor's action against Attorney Riley or in this action that Mr. Riley was engaged in some kind of conspiracy to transfer the ownership of AIA? There is one in which Reed Taylor, in the Riley case, alleges that he's entitled to collect Donna Taylor's $10 million that is owed for her preferred shares. That's at ER 1111. He makes that allegation in the Riley case. Against Riley? No, in the Riley case. Yes, in that case he's making the allegation that he gets to collect Donna Taylor's money. But here's the impact of this state court case, the Riley state court case, as well as the other state court cases on the current case. Mr. Taylor's shares were determined, the redemption agreement to redeem Mr. Taylor's shares was deemed illegal. Depending on the valuation that Mr. Taylor puts on that, that freed up $8, $10, $17, some millions of dollars that now AIA is not responsible for. So that determination in that case, in Riley, and the Riley case comes from that illegal stock transaction, that gives an impact on the current case because now there are more assets available to AIA because it doesn't owe this debt to Mr. Taylor that it can now pay Donna Taylor. It's not... I'm trying to understand the argument, and forgive me if I'm not quite there. Is what you're saying that a possible outcome of Mr. Taylor's action against Riley et al. could unwind the transactions that resulted in the follow-on directors? No. That can't happen? I don't see a way that could happen. So the only thing that could happen, as you're stating it, is that there could be more money out there that some other lawsuit might determine was owed to one or other of the parties. That's an outcome that's already happened. That's because of the Idaho Supreme Court? That's because of the AIA case, correct. What I'm saying is that... Okay, so let me go back to the... That's the AIA case. It's already been determined that this was an illegal transaction. Correct. But then we were talking... I thought we were talking about the Reed-Taylor v. Riley case. Which is a case that comes directly out of that 1995 case. Correct. It is essentially an action by Mr. Reed-Taylor to collect against these attorneys that which he was unable to collect under that illegal contract. So, again, you see the through line because the stock redemption agreement affected Mr. Taylor's ability to have his stock redeemed, which gave more assets that are available to Donna Taylor and the other common shareholders. And this case, the Riley case, is an attempt by Reed-Taylor to get that money he couldn't get from the attorneys. So all of the facts are similar or involved. The causes of action for corporate malfeasance against these and the other defendants, against the attorney defendants and the other defendants for breach of fiduciary duty, fraud, are... Well, how can... This is where maybe I'm having some dislocation in what they're saying and what you're saying. I recognize that there are causes of action that are named the same thing, breach of fiduciary duty, negligence, whatever. But the federal court action is looking forward post-1995 for claimed breaches of fiduciary duty. And these other actions are looking at the 1995 transaction or events leading it up to it. Isn't that true? Correct. Okay. So the fact that events leading up to 1995 might free up some money that can be paid out somewhere, that doesn't actually affect whether or not you have a cause of action or whether they have a cause of action in the federal claim, does it? In two respects it may, because of the causes of action that are common and the parties that are common. There may be some collateral effect, collateral estoppel effect, or res judicata effect based on the ruling in the state court action on those two causes of action. But normally that... It's fairly... You know, to have a Colorado stay is an unusual thing and to strip someone of their federal jurisdiction. So the fact that there may be potential impact... Can you be any more specific? Because we now have an Idaho Supreme Court decision, correct, in Taylor v. Riley. On permissive appeal for part of the case. It's still pending on other parts of the case for which there's a motion for reconsideration and a notice of appeal. So on the part of the case that the Supreme Court decided, does that affect the federal case? No, that's strictly professional negligence, as alleged against Mr. Riley. It doesn't affect the causes of action for constructive fraud or breach of fiduciary duty, which are still being determined through the motion for reconsideration and a notice of appeal. A couple of quick questions. John Taylor, James Beck, and Michael Cashman, that's the current board? I don't know whether they're the current board, but they were, I think, at the time of the complaint. Taylor, Beck, and Cashman are in this litigation? Correct. But not in Taylor v. Riley? Correct. Hawley, Troxell, Ennis, and Hawley, the law firm, they're in this litigation? Correct. Were they in the Taylor v. Riley litigation? Yes. Richard Riley is named in both? Correct. Gary Babbitt and D. John Ashby, they're members of the Hawley Troxell firm? Correct. They're in this action. They weren't in the other action, correct? Correct. Eberle Berlin, that's the prior law firm? They were in Mr. Taylor's action? Correct. But not in this action? Correct. Okay. Thank you. Substantial similarity is maybe, perhaps, tenuous with respect to Taylor v. Riley, but it is not tenuous in any way when you group all of the cases together. The other two that are still remaining are exactly the same causes of action involving most of the same parties. It is a direct action rather than a derivative action, but NACASH tells us that's a distinction without a difference under Colorado River. What would be wrong, then, with leaving all those under a Colorado River stay and lifting the stay as to Taylor v. Riley? There's no problem with that, as long as the stay stays in effect. The problem that's going to...  I said lifting the stay as to Taylor v. Riley so that the federal court action can proceed. It's our position that the stay should stay in place because of these other pending actions that have been there longer that meet all of the Colorado... You can't separate them, in other words. That's your position. I don't think you can, for the very reason that the stay is a motion for reconsideration. Can I follow up on that? What about lifting the stay as to just Taylor v. AIA and the derivative action? What would be wrong with that? The original underlying case, the first case that was filed? If this case were to proceed solely on the cause of action, as I understand it, that's a derivative claim against AIA. Is there such a claim here? There is. Correct. What's the problem with allowing that portion of this case to go forward? Because the other cases other than AIA are dealing still with the same issues. How much money there is in the AIA Corporation, payment of Donna Taylor's Series A. In fact, those preferred stocks were valued in the state court, and that has a direct impact on the federal court and would be a reason to stay in favor of the state court. Thank you. Thank you. This is the only derivative action, period, for the AIA shareholders, and the only one that's ever been pending. There is no parallel action. What we have here is Judge Boyle was misled initially. That's why he stayed the case pending two cases that he later abandoned. Abandoned AIA, Taylor v. AIA, abandoned Donna Taylor v. John Taylor. Why did he jump on the Taylor v. Riley bandwagon? Because he was misled again. They cite these discovery responses that have nothing to do. There are no derivative claims. There are no malfeasance claims in Taylor v. Riley. It's in the record. This is all smoke and mirrors coming from this side. There is no... It's collectability. If you look at collectability, if Reed Taylor wouldn't have been knocked out, he would have had tort claims. That's what that ER111 reference is, discovery responses. There are no claims of that nature in the complaint. But Holly Troxell is in both cases, right? But only... Can I finish? Sorry, sorry, sorry. Holly Troxell is in both cases, correct? Holly Troxell is in both cases. And what's the allegation in Mr. Taylor's action against Riley that relates to Holly Troxell? It's very limited. It's on the breach of a judiciary duty claim as it pertains solely to this one issue, which is in the complaint. While Taylor v. AIA was litigating, Mr. Riley and his firm represented AIA against Mr. Taylor, against the opinion letter that he wrote to Mr. Taylor. And Mr. Taylor said, You can't do that. You wrote the opinion, and now you're saying the whole thing's illegal? And what happened is they concealed facts. He argued that the whole transaction was illegal with Holly Troxell. After the Supreme Court ruled and laid it to rest in Taylor v. AIA, he comes back. And what does Riley do? Guess what? It's all legal. I think it's all legal. And that's what that claim relates to, solely because Holly and him concealed that and took positions against his letter. That's it. That's the only claim. That claim is not in this derivative action. There's nothing even close to it in this derivative action. Back to the misleading. First, Judge Boyle stays the case. You know, it's done. I'm not counsel then, but it's done. And nobody appealed that? Nobody appealed that. Then, okay, but, that stay was entered under the argument that those other cases would resolve the cases. Okay? That's what Colorado River is. What happened right after the stay is filed? A year or two later, they file a new action to eliminate the shareholders. If there had been actions pending that would resolve all the claims, they wouldn't have needed to do that. Then they come back, and I call them out on that when I came on board. And then the judge, light bulb, wow, these cases aren't related, because I'm showing more evidence. Then, those discovery responses, the same ones we're talking about, persuaded him that Taylor v. Riley is somehow related. I'll give the former counsel credit. He was right. This is like two trains going down opposite directions of the track. The cases couldn't be, there is no similarity. Period. And the money will go to Reed Taylor and Taylor v. Riley. It's a confidential settlement. I can't talk about what that is. What I can tell you is there will be no checks written to anyone other than Reed Taylor for that money. And there was no court approval required, i.e. no derivative action anywhere that would have had to require court approval. That money's going into Reed Taylor's pocket. We're talking about apples to watermelons. It's not even apples to Volkswagens. The Volkswagen's over here. Thank you. Thank both counsel for your argument this morning. Taylor v. Holly Troxell is submitted.
judges: Hawkins, McKeown, Gleason